## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RAYMOND and LANA ELDER,

      Plaintiffs,

v.                                                                  Case Number: 2:10-cv-13144

HARRISON TOWNSHIP, a municipal
corporation; ANTHONY FORLINI, in                 Paul D. Borman
his individual and official capacity;            United States District Judge
VIJAY PARAKH, in his individual and
official capacity; and ERIN HARDCASTLE-
MEHLHOSE, in her individual capacity,
jointly and severally,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This matter comes before the Court on Harrison Township (the "Township") and Anthony

Forlini's ("Forlini") motion for summary judgment and to dismiss Raymond Elder ("Mr. Elder") and

Lana Elder's ("Dr. Elder") (collectively "Plaintiffs" or the "Elders") claims for various

constitutional violations pursuant to 18 U.S.C. § 1983. (Dkt. No. 12.) Additional defendants Erin

Hardcastle-Mehlhose ("Hardcastle") and Vijay Parakh ("Parakh") (collectively with the Township

and Forlini "Defendants") filed a concurrence to join Defendants Township and Forlini's motion.

(Dkt. No. 19.) Plaintiffs filed a response to Defendants' motion (Dkt. No. 20) as well as a response

to Hardcastle and Parakh's concurrence. (Dkt. No. 25.) Hardcastle and Parakh filed a reply to

Plaintiffs' response. (Dkt. No. 26.) For the following reasons the Court GRANTS Defendants'

motion for summary judgment.

I.    **Background**

A.    **The Parties**

Mr. Elder was an electrical engineer in the auto industry, having worked for many years at Ford, and then for Visteon. (Compl. ¶ 9.) Dr. Elder was an Emergency Room physician at St. John's Hospital in Macomb County. (*Id.* ¶ 10.) Plaintiffs were married in 2000 and have four children together. (*Id.* ¶ 18.)

Harrison Township is a charter township and Municipal Corporation operating under the Charter Township Act, Mich. Comp. Laws § 42.1 *et seq.* (*Id.* ¶ 11.) The Township is run by a board of three elected officials along with four elected Board of Trustees members. (*Id.* ¶ 12.) Forlini was the supervisor for the Township. (*Id.* ¶ 13.) As supervisor, he allegedly was the final decision-maker and policy-maker for the Township with respect to all matters. (*Id.*) Plaintiffs have sued Forlini in both his individual and official capacities.

Parakh was the top Building Official for the Township. (*Id.* ¶ 14.) He was allegedly "delegated with policymaking responsibility over all matters regarding residential home construction and compliance with local ordinances concerning the same." (*Id.*) Plaintiffs claim that Parakh was "charged with making final decisions and policies related to plan approval, permitting, inspections, certification, and compliance of all residential home construction, including the construction of the home that Plaintiffs were building during the events giving rise to this suit." Parakh has also been sued in both his individual and official capacities.

Defendant Hardcastle was employed by the Township as an Ordinance Officer/Building Inspector. (*Id.* ¶ 15.) Plaintiffs claim that she was responsible for enforcing the Township's construction codes and related ordinances, with authority similar to a law enforcement officer. (*Id.*)

She allegedly acted at all relevant times under the color of law, within the scope of her employment, and under the supervision and direction of Parakh and Forlini. (*Id.*) Plaintiffs have sued her in her individual capacity only. (*Id.*) Hardcastle is also a co-debtor in a pending bankruptcy action filed in the United States Bankruptcy Court, Eastern District of Michigan, Case No. 10-46231. (*Id.* ¶ 16.) The bankruptcy judge has lifted the automatic stay to allow Plaintiffs to proceed against her in this action. (*Id.*; Ex. A - *Order Modifying The Automatic Stay So As To Permit Raymond And Lana Elder To Proceed With Litigation Against Debtor And Related Non-Debtor Parties*.)

## B. Factual Background

This dispute revolves around Plaintiffs' attempts to build their "dream home" at 38350 Lakeshore Drive in Harrison Township. (*Id.* ¶ 20.) After purchasing the property, the Township condemned the home and a boathouse located there. (*Id.* ¶ 21.) Efforts to reverse the condemnations were unsuccessful, but the Township agreed to cooperate with the Plaintiffs' efforts to build a new home and assess it at a fair market value if they tore down the old home at their own expense. (*Id.*) In the fall of 2000, Plaintiffs applied for a demolition permit, which was initially denied, but eventually granted in January 2001. (*Id.* ¶ 22.) By March 2001, Plaintiffs had finished demolition of the old home. (*Id.* ¶ 23.)

Plaintiffs were also remodeling another home they owned at 37751 Lakeshore Drive. In March 2002, Mr. Elder sold their home in the city of Redford where Plaintiffs had been living until that time. (*Id.* ¶ 23.) Between March 2002 and July 2004, Plaintiffs lived in the 37751 Lakeshore home while they continued to remodel it. (*Id.* ¶ 24.) They finished work on the 37751 home in August 2004 and sold it around that same time. (*Id.* ¶ 25.) Plaintiffs purchased yet another property on Lakeshore Drive, 38839 Lakeshore, to live in while they finished designing and constructing their

"dream home" at 38350 Lakeshore.  (*Id.*)

In October 2004, while Plaintiffs were designing their dream home, they met with Ordinance Officer Melissa Spranger, who at the time pre-approved Plaintiffs' designs. (*Id.* ¶¶ 26-27.)  By June 2005, the Township had granted final approval of the Elders' construction plans and all the necessary permits were approved.  (*Id.* ¶ 30.)  By November 2005 Plaintiffs finished the rough framing of their new home.  Township Building Inspector Dennis Blanc approved the foundation work and conducted a "rough inspection" of the frame work, which Plaintiffs passed.  (*Id.* ¶¶ 31-32.)  Between November 2005 and March 2006, all heating and cooling, plumbing, electrical work, and insulation was installed, inspected, and approved of by the Township.  (*Id.* ¶¶ 33-34.)  By August 2006, all inspections on Plaintiffs' home had been approved and only the driveway and front porch remained to be completed.  (Pls.' Resp. in Opp. to Defs.' Mot. for Summ. J. 2.)  All Plaintiffs still needed to do was to pass the final inspection and receive their Certificate of Occupancy.  (*Id.*)  As a result, Plaintiffs sold their home at 37751 Lakeshore and moved into their almost complete dream home.[1]  (*Id.*)

In early 2006 the Township hired Defendant Hardcastle as an Ordinance Officer and appointed her to be a Building Inspector.  (*Id.*)  Around this time, Mr. Elder intervened in support of Plaintiffs' good friends, the Winowskis, who were involved in a housing dispute with the Township.  (*Id.*)  Mr. Elder had helped the Winoswskis build a home of their own on a double lot they purchased just down the street from Plaintiffs.  (*Id.*)  The Township had issued a "stop work" order on the Winowskis' home in November 2006. (Compl. ¶ 44.)  Because Mr. Elder helped design

---

[1] Plaintiffs claim that the practice of moving into a house before officially receiving the Certificate of Occupancy was routinely tolerated by the Township and, in fact, Plaintiffs did the exact same thing while remodeling their 37751 Lakeshore home.

the home, and because he had greater technical knowledge, he acted as the Winowskis'
spokesperson during a meeting with the Township through Hardcastle and another inspector Mr.
Ovares. (*Id.* ¶ 45.)  While at first the negotiations were successful, the Township later issued
another "stop work" order because purportedly the Winowskis' plans had changed. (*Id.* ¶ 46.)
Plaintiffs allege that no such changes occurred, and that the only reason why the orders were issued
was because Forlini and the Township did not want the home built; they wanted to use the property
to develop a marina and other projects. (*Id.* ¶ 47.)

Plaintiffs believe that Mr. Elder's support for the Winowskis made the Township and its
officials very unhappy, and provoked them to initiate "a concerted campaign of retaliation against
Plaintiffs." (Pls.' Resp. 2-3.)

On June 22, 2007, the Township, through Hardcastle, informed Plaintiffs that it was
protesting their occupancy of the 38350 Lakeshore home. (*Id.* at 3.)  The letter informed the Elders
that their construction permits were about to expire and that if they did not leave, the Township
would be contacting Child Protective Services ("CPS") about the family living in an "unsafe
structure" without a Certificate of Occupancy. (Compl. ¶ 49.)  The letter gave Plaintiffs ten days
to comply before the Township filed a formal complaint in state district court. (*Id.*)  After receiving
the letter, Mr. Elder contacted Hardcastle who told him the authorities would not be called, and that
he should just apply for an extension of the permits. Mr. Elder was initially granted an extension
by Parakh. (*Id.* ¶¶ 51-52.) When he extended the permits, however, Parakh demanded that Plaintiffs
vacate the property and remove all of its contents prior to scheduling a final inspection. (*Id.* ¶ 53.)

On August 7, 2007, Hardcastle, at the instruction of Parakh, wrote another letter to Plaintiffs
giving them "official notification" to leave the property within seventy-two hours and threatening

5

to call CPS, the police, and the fire department if they did not.  (*Id.* ¶ 55.)  Plaintiffs claim that on August 8, Mr. Elder met with Parakh and the two agreed that the Elders could move all their furniture to the center of the home and evacuate by August 12, and that the final inspections would be conducted on August 13.  This agreement was purportedly reduced to writing on August 9 by Plaintiffs' attorney and faxed to the Township.[2]  (*Id.* ¶¶ 57-60.)

On August 9, however, Parakh called Mr. Elder and left a message saying there was no agreement, Plaintiffs had to move out, and the water was being shut off in two days.  (*Id.* ¶ 62.)  Also on August 9, despite the fact that Plaintiffs had already removed their children from the house, CPS conducted an investigation of the home, concluded it was not a danger to their children, and closed the Elders' file.  (Pls.' Resp. 3.)

August 9, 2007 was also the date of a physical altercation between Mr. Elder and Hardcastle.  That afternoon Mr. Elder was working to get the home ready for the final inspection when Hardcastle pulled up and posted a brightly colored "Notice of Violation" sticker to the door, which Mr. Elder peeled off.  (*Id.*)  After Mr. Elder asked her to leave and told her he was calling the police, Hardcastle went to her car and got a digital camera.  (*Id.*)  When Mr. Elder again asked her to leave, Plaintiffs claim Hardcastle "became irate and swung the camera at Mr. Elder's head as he was speaking with 911 a second time."  (*Id.*)  Hardcastle allegedly continued to strike Mr. Elder, causing serious injuries to his head and elbow.  (*Id.* at 3-4.)  When the police arrived, Mr. Elder was initially detained and put in a police cruiser, but was later taken to the hospital.  (*Id.*)

Plaintiffs claims that over the next following months Defendants tried to cover up and/or distort the truth as to what actually occurred during the altercation.  (*Id.* at 4.)  Plaintiffs claim that

---

[2] Plaintiffs did not include a copy of this proposed agreement in their filings.

the Defendants conspired against Mr. Elder and had Hardcastle initiate criminal charges against him in November 2007.  (*Id.*)  Plaintiffs allege that the other Defendants participated in the decision to prosecute Mr. Elder even though they knew he had done nothing wrong.  Further, Plaintiffs contend that Hardcastle lied to her doctors and at trial.  Mr. Elder's trial began on October 21, 2008.  After four days, the jury delivered a unanimous verdict of "not guilty" on all charges.  (*Id.*)

### C.     Procedural History

Since 2007, the parties have been involved in multiple lawsuits.  In addition to Mr. Elder's criminal prosecution in October 2008, the litigation history between these parties includes: a state court mandamus action (Pls.' Resp. Ex. 8, *Elder I* Compl.); a defamation action brought by Plaintiffs (Ex. 6, *Elder II* Compl.); and another state court action initiated by Plaintiffs claiming battery, malicious prosecution, abuse of process, and negligence under Michigan state law.  (Ex. 1, *Elder III* Compl.)

### 1.     *Elder I*: Mandamus and Superintending Control

At the end of 2007, the Township and Parakh had still not allowed the final inspection of Plaintiff's home to be conducted.  (Pls.' Resp. 5.)  Plaintiffs brought a mandamus action in Macomb County Circuit Court ("MCCC") on January 9, 2008.  (MCCC Case No. 08-000076-AW; Ex. 8.) After the filing of that suit, Defendants allowed the final inspection to take place and issued a Certificate of Occupancy to Plaintiffs.  (Pls.' Resp. 5.)  On July 22, 2008, *Elder I* was dismissed without prejudice for "no progress."  (*Id.*; Ex. 9.)

### 2.     *Elder II:* Defamation and Loss of Consortium

On August 6, 2008, Plaintiffs filed a defamation action in Macomb County (MCCC Case No. 08-3400-CZ) against the Township and Forlini alleging that those Defendants defamed Plaintiffs

when Forlini spoke to the media about the August 9, 2007 incident between Mr. Elder and Hardcastle. (Pls.' Resp. 5; Ex. 6.)  The case was assigned to Judge Richard L. Caretti.  On October 1, 2008, the Defendants moved for summary disposition based on governmental immunity.  (Pls.'s Resp. 5-6.)  On November 10, 2008, Judge Caretti granted Defendants' motion.  On November 26, 2008, *Elder II* was dismissed with prejudice.  (*Id.* at 6; Ex. 7.)

### 3.    *Elder III*: Battery, Malicious Prosecution, Abuse of Process and Negligence.

On May 14, 2009, Mr. Elder filed a tort suit under Michigan state law in Macomb County. (MCCC Case No. 09-2264-NO; Pls.' Resp. Ex. 1.)  *Elder III* alleged claims against the Township and Hardcastle that are the state law counterparts to the federal claims alleged in the instant action pursuant to 18 U.S.C. § 1983.  (Pls.' Resp. 6.)  On August 17, 2009, Hardcastle and the Township filed a motion for summary disposition, arguing that the claims in *Elder III* were barred by res judicata and compulsory joinder under Michigan Court Rule 2.203(A).  (*Id.*; Ex. 2.)  On October 7, 2009, Judge Caretti denied Defendants' motion in a written Opinion and Order.  (Ex.3.)  The Township did not appeal that decision.  (Pls.' Resp. 6.)  On February 26, 2010, the claims against the Township were dismissed without prejudice by stipulation.  (Ex. 5.)  The case remains pending as to Hardcastle, but in reality is "closed" because of the stay entered on September 15, 2009.  (Pls.' Resp. 7.)

### 4.    *Elder IV*: 42 U.S.C. § 1983, Excessive Force, Malicious Prosecution, Retaliation, Conspiracy, and Supervisory/Municipal Liability

The instant action was filed on August 9, 2010 – six days after the federal bankruptcy court modified the stay to permit Plaintiffs to proceed against Defendant Hardcastle, and six months after the Township agreed to dismiss *Elder III* without prejudice.  (*Id.*)   The claims are brought against

8

the Township, Hardcastle, Forlini, and Parakh.  Defendants ask this Court to dismiss Plaintiffs'
claims as barred by res judicata as a result of *Elder II*.

## III.  Discussion

Res judicata encompasses two preclusion concepts, claim preclusion and issue preclusion
(also known as collateral estoppel).  *Migra v. Warren City. Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77
n.1 (1984); *Reid v. Thetford Twp.*, 377 F. Supp. 2d 621, 625 (E.D. Mich. 2005).  Issue preclusion
refers to the effect a judgment may have of prohibiting a party from relitigating a matter that has
already been brought before a court and decided.  *Migra*, 465 U.S. at 77 n.1.  Claim preclusion, on
the other hand, bars litigation of a matter that has never been raised before a court but is nevertheless
prohibited because it could and should have been advanced in a previous suit.  *Id.*

This case involves both aspects of res judicata.  In their motion for summary judgment,
Defendants argue that claim preclusion bars Plaintiffs' action because they are now advancing
claims that could and should have been raised during *Elder II*.  (Defs.' Br. in Supp. of Mot. for
Summ. J. 5.)  However, issue preclusion is also at issue because Defendants Harrison Township and
Hardcastle have already raised the argument now advanced by all Defendants in *Elder III*.  (Ex. 3.)
When Plaintiff brought nearly identical charges as those now before the Court in state court,
Defendants Harrison Township and Hardcastle moved for summary judgment on claim preclusion
grounds. (Pls.' Br. Ex. 3.)  Judge Richard L. Caretti (who also presided over *Elder II*) held that res
judicata did not bar Plaintiffs' new claims and denied Defendants' motion to dismiss.  (*Id.*)  As a
result, the Court must first determine whether Defendants' res judicata argument is itself barred by
the preclusive effect of Judge Caretti's decision in *Elder III*.  If it is not, the Court must decide
whether the doctrine of claim preclusion bars Plaintiffs' instant action based on Judge Caretti's

decision in *Elder II*.

### A.    Preclusive Effect (If Any) Of *Elder III*

Section 1738 of the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to a state-court judgment as another court of that state would give. *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986).  In scenarios where § 1738 applies, district courts may not rely on federal or common law preclusion rules, but rather must use state law to determine the impact of state-court decisions.  *Id.* (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982)).

In *Parsons Steel*, Parsons Steel filed similar lawsuits against First Alabama Bank in federal and state courts.  The defendant Bank received a favorable judgment in the federal court and then pleaded res judicata in the state court action.  *Id.* at 520.  The Alabama state court, however, ruled that res judicata did not bar the state action.  *Id.*  Following a jury trial, Parsons Steel was awarded a verdict for over four million dollars.  *Id.*  After they lost in state court, the Bank went back to the federal district court and filed for an injunction against enforcement of the state court action.  *Id.* at 520-21.  The district court held that the state court proceedings should have been barred by res judicata and granted the requested injunction pursuant to the Anti-Injunction Act's "relitigation exception."  *Id.* at 521.  The Court of Appeals affirmed.  *Id.*

The Supreme Court, however, reversed.  *Id.* at 525.  The Court held that "the Court of Appeals erred by refusing to consider the possible preclusive effect, under Alabama law, of the state-court judgment."  *Id.*  It went on to state: "[e]ven if the state court mistakenly rejected respondents' claim of res judicata . . . the Full Faith and Credit Act requires that federal courts give the state-court judgment, and particularly the state court's resolution of the res judicata issue, the same preclusive

10

effect it would have had in another court of the same State." *Id.*

Lower courts have interpreted *Parsons Steel* to require federal courts to apply a two-part test to determine whether a state court's ruling on res judicata is itself entitled to full faith and credit. *Galveston Wharves v. Pires*, No. 94-60094, 1994 WL 652551, at *3 (5th Cir. Apr. 7, 1994). First, the federal court must decide whether the state court has finally rejected a claim of res judicata. *Id.* Next, the court must look to state law to determine the preclusive effect of that decision under that state's laws. *Id.*; *see also Parsons Steel*, 474 U.S. at 525. "The Supreme Court appears to define 'finally rejected' for this purpose as when the state court has ruled definitively on the merits of the res judicata claim." *Pires*, 1994 WL 652551, at *3 (citing *Parsons Steel*, 474 U.S. at 524).

In *American Town Center v. Hall 83 Associates*, the Sixth Circuit applied *Parsons Steel* to a Michigan state-court decision. *See* 912 F.2d 104, 111-12 (6th Cir. 1990). In that case, the Michigan state court rejected the defendant's res judicata argument because several facts were still in dispute. *Id.* at 111 n.1. Because there were still contested facts, the state court left open the option that the defendant might raise its res judicata argument again later. *Id.* at 112. As a result, the Sixth Circuit concluded that the state court judgment was not entitled to full faith and credit by the federal court. *Id.* at 111 n.1.

Applying *Parsons Steel* to the instant case, this Court is not obligated to give Judge Caretti's order denying Defendants' motion for summary judgement in *Elder III* full faith and credit under § 1783. Although it seems to be a final decision with respect to the res judicata issue, under Michigan law, the order is not entitled to preclusive effect because an order denying summary judgment in an action that is later voluntarily dismissed without prejudice is not a final decision on the merits.

11

First, the state court finally rejected Defendants' res judicata claim by denying the Township and Hardcastle's motion for summary judgment. (Pls.' Ex. 3.) Unlike the court in *American Town Center*, Judge Caretti did not deny Defendants' motion because issues of fact remain unresolved, and accordingly did not leave the matter open for reconsideration later. *See* 912 F.2d at 111 n.1. Nothing indicates that Defendants could have raised their res judicata argument again. As a result, the first prong of the *Parsons Steel* test – whether the state court "finally rejected" the claim of res judicata – is met. *See Pires*, 1994 WL 652551, at *3.

However, this does not end the inquiry. The Court must then determine what preclusive effect, if any, the denial of summary judgment in *Elder III* has under Michigan law. *See id.* Because Plaintiffs seek to bar Defendants from raising an argument that was previously decided by a state court, the Court must analyze the law of collateral estoppel or issue preclusion. For collateral estoppel to apply, three elements must be met: (1) an issue must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-84 (2004) (quoting *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3 (1988)). Mutuality of estoppel requires that the party taking advantage of the earlier adjudication would have been confined to that judgment even if it had gone against it. *Id.* at 684-85. However, defensive collateral estoppel is allowed even where mutuality does not exist, as long as the other party had a full and fair opportunity to litigate the issue in an earlier action. *Id.* at 691.

In the instant case, Judge Caretti's order denying Defendants' motion for summary judgment was not a "final judgment." *See id.* at 682. Under Michigan Court Rule 2.604(A), a judgment is not considered final if it is subject to revision and does not adjudicate all the rights and liabilities

12

of all the claims for all of the parties.  *See also Mullins v. City of Inkster*, No. 05-73452, 2008 WL 597188, at *12 (E.D. Mich. Mar. 3, 2008).

In *Mullins*, the plaintiff brought several claims arising from his arrest by an off-duty police officer.  *See id.*, at *8.  He alleged claims against the City of Inkster and the arresting officer, James Bebee, in state court in January 2005.  *Id.*  Both the city and Bebee moved for summary disposition in the state court action.  *Id.*, at *9.  The state court granted summary disposition to Inkster but denied, in part, Bebee's motion.  *Id.*, at *10.  The state-court action was set to go to trial in June of 2006 but the remaining parties settled, and the case was dismissed.  *Id.*, at *11.  The plaintiff had also filed an action in federal court in September of 2005, against Inkster and Bebee, alleging similar claims to those brought in the state-court action.  *Id.*

In the federal case, Inkster argued that the plaintiff's claims were barred by res judicata.  *See id.*, at *12.  Although the state court had earlier granted Inkster's motion for summary disposition, this Court held that res judicata did not bar the plaintiff's claims against the city.  *Id.*  The Court stated, "since the ultimate state court dismissal of the case was without prejudice, this Court cannot apply Michigan preclusion doctrines to bar Plaintiff's claims against Inkster."  *Id.*  While acknowledging that in Michigan a grant of summary disposition is usually a final ruling on the merits for preclusion purposes, the Court reasoned that "a grant of partial summary disposition does not constitute a final judgment as to the winning party until the entry of a final judgment."  *Id.*, at *12 n.3 (citing Mich. Ct. R. 2.604(A)).

In the instant case, the state court's order denying Defendants' motion for summary judgment based on res judicata in *Elder III* is not entitled to preclusive effect under Michigan law because it is not a final judgment on the merits.  As in *Mullins*, *Elder III* was ultimately dismissed without

13

prejudice.  As a result, this Court cannot apply preclusion doctrines to it.  *See Mullins*, 2008 WL 597188, at *12.

  **B.**  **Does Claim Preclusion From *Elder II* Bar Plaintiff's Claims?**

  When considering whether claim preclusion is applicable, courts must rely on the law of the state in which the first judgment occurred; in this case Michigan.  *Reid*, 377 F. Supp. 2d at 624. Michigan law requires a court to apply claim preclusion to bar an action if: (1) there was a prior final decision on the merits; (2) the parties in both actions are the same; and (3) the allegations in the second case could have been resolved in the first case.  *Id.* at 625 (citing *Adair v. State*, 470 Mich. 105, 121 (2004)).  Under Michigan law, a grant of summary disposition is a final decision on the merits.  *Chakan v. City of Detroit*, 998 F. Supp. 779, 783 (E.D. Mich. 1998); *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 510 (2004).

  Regarding the second factor – that the parties in both actions be the same – the Michigan Supreme Court has stated that "a perfect identity of the parties is not required, only a 'substantial identity of interests' that are adequately presented and protected by the first litigant."  *Adair*, 470 Mich. at 122.  Privity may exist between individual government officials and the entities that they work for even if the officers were not named defendants in the pervious action.  *See,* e.g., *Fleming v. City of Detroit*, No. 04-74081, 2006 WL 2559862, at *5 (E.D. Mich. Sept. 1, 2006).  When officers are sued in their official capacity, privity is often found.  In *Fleming*, the court stated that claims brought against Detroit's police chief in his official capacity were "effectively claims against the City of Detroit" and held that those claims were barred by res judicata from an earlier case the plaintiff brought against the city but not the individual officer.  *Id.*

  A closer question exists regarding claims brought against officers in their individual

14

capacity. While privity usually exists between an official sued in his official capacity and the governmental unit he works for, "the opposite is generally true as to a city official sued in his personal capacity." *Fleming*, 2006 WL 2559862, at *5. Despite this general rule, when analyzing the claims brought against the police chief in his individual capacity, the *Fleming* court held that those too were barred by the earlier action. *Id.*, at *7. Where the interests of the governmental entity and individual officer are closely aligned, or "where the inclusion of the personal capacity claim amounts to nothing more than a pleading artifice, privity may be found to exist regardless of the fact that the official has been sued in his personal capacity." *Id.*, at *6 (quoting *Connor v. Reinhard*, 847 F.2d 384, 394 (8th Cir. 1989)). The court explained "[t]he claims against [the individual defendant] are predicated solely upon his role as a policy maker for the City's Police Department." *Id.*, at *7.

Accordingly, the court held that the "realities" of the relationship between the individual defendant and the City of Detroit were such that he should be considered in privity with the city for res judicata purposes. *Id.*; *cf. McCoy v. Michigan*, No. 08-1641, 2010 WL 841198, at *3 (6th Cir. Mar. 12, 2010) (holding that this prong is met "when the previous governmental-unit Defendant (here, the MDOC) and the present-case Defendants (here, the individually named Defendants) have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claims in the second"); *O'Leary v. Charter Twp of Flint*, No. 09-13075, 2010 WL 2870400, at *8 (E.D. Mich. July 21, 2010); *but see Stewart v. Kent County*, No. 200120, 1998 WL 1990460, at *3 (Mich. App. July 31, 1998) (finding that the defendants failed to distinguish their official actions from their individual ones, and holding that the plaintiff's claims against the named defendants in their individual capacity were not barred by res

15

judicata).

There are two tests courts commonly employ when analyzing whether the third requirement – that the claims brought in the second case could have been brought in the prior case – is met. These are the "same evidence" test and the "same transaction" test. *Adair*, 470 Mich. at 124. Under the same evidence test, a second suit is barred if the evidence used to support the second action would have sustained the first one, or if the same facts were essential to maintain both actions. *Id.* (quoting *River Park, Inc. v. Highland Park*, 184 Ill.2d 290, 307-09 (1998)). Under the same transaction test, it does not matter whether different evidence is used to sustain the second claim (if for example the claims or legal theories are different), the two will constitute a single cause of action if a single group of operative facts gives rise to the plaintiff's claims. *Id.* The transactional test is therefore broader than the same evidence test. *Id.*

Michigan has adopted the broader same transaction test. *Id.* at 124-25. The Michigan Supreme Court has instructed that "[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, and whether they form a convenient trial unit." *Id.* at 125 (quoting 46 Am. Jur. 2d Judgments § 533, p. 801) (emphasis in the original).

Once the elements required for applying claim preclusion are met, the doctrine bars every claim arising from the same transaction that the parties could have raised had they exercised reasonable diligence. *Reid*, 377 F. Supp. 2d at 625 (quoting *Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. 569, 575 (2001)). This is true regardless of whether the second suit is brought in federal or state court. *Squires v. City of Detroit*, No. 240762, 2003 WL 22495601, at *1 (Mich. App. Nov. 4, 2003).

16

Under Michigan law, the plaintiff is obligated to supplement his complaint to allege any claims arising from the same transaction or risk having claims that arise while the original action is pending precluded by res judicata. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 750 (6th Cir. 2003). In *Dubuc*, the plaintiff sued Green Oak Township for allegedly retaliating against him for exercising his constitutional rights by refusing to grant him construction and building permits to develop his land. *Id.* at 740. The plaintiff filed several suits against the township, four in total. This Court granted the defendant township's motion for summary judgment because res judicata barred the plaintiff's fourth action. *Id.* On appeal, the Sixth Circuit affirmed this Court's decision, dismissing the plaintiff's argument that since his third action the township had engaged in additional retaliatory conduct. *Id.* at 750-51. The court stated "[w]hen the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit, however, the victim is obliged to amend his or her initial complaint to add these new allegations." *Id.* at 750.

The rule announced in *Dubuc* was recently affirmed by the Sixth Circuit in *Buck v. Thomas Cooley Law School*, 597 F.3d 812, 817-18 (6th Cir. 2010). In *Buck*, the court held that "under Michigan law, a plaintiff has a duty to supplement her complaint with related factual allegations that develop 'during the pendency' of her state suit or have them barred by res judicata." *Id.* at 818; *but see Schenden v. Addison Twp.*, No. 244389, 2004 WL 2389502, at *4 (Mich. App. Aug. 26, 2004) ("If a second claim has not ripened when the first claim is *filed*, res judicata does not bar the second claim.) (emphasis added).[3] In *Buck*, the plaintiff alleged that Cooley Law School mistreated her in

---

[3] Judge Caretti also adopted the view that the relevant inquiry is whether Plaintiffs' claim was ripe at the time they filed *Elder II* when he denied Defendant Township and Hardcastle's motion for summary judgment in *Elder III*:

[T]he claims in the instant case could not have been resolved in

17

several ways throughout her enrollment there.  In accordance with the rule announced in *Dubuc*, the plaintiff attempted to amend her complaint to add allegations that occurred after she filed her initial action, but the state court did not allow her to do so.  *Buck*, 597 F.3d at 818.  The Sixth Circuit held that those claims were nonetheless barred by res judicata.  *Id.*  It stated, "[a]lthough the trial court did not allow this amendment, under res judicata principles, plaintiff's recourse from the state trial court's adverse ruling after remand was to file an appeal in the state system, not file a separate federal lawsuit alleging the same facts."  *Id.*

A subsequent claim will not be barred by res judicata if the plaintiff could not have brought the claim during the original action.  *See Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).  In *Kane*, the Sixth Circuit found that the plaintiff was not prohibited from raising an indemnity claim that was assigned to them eighteen months after the first case was closed.  *Id.*  The court stated "[s]imply put, the Kanes could not have asserted a claim that they did not have at the time."  *Id.*; *see also Dietrich v. Stephens*, No. 2006-078629-CK, 2008 WL 2389502, at *1 (Mich. App. June 12, 2008) (holding that res judicata did not bar plaintiff's subsequent claims for post-settlement default because these claims arose "from a set of facts that were not yet in existence at the time of the state court settlement").

Additionally, this doctrine does not require plaintiffs to bring claims that do not arise out of the same transaction simply because they have a pending case against the same defendant.  *See, e.g.*,

---

> [*Elder II*], as at the time of filing of the first case, the criminal case had not been resolved . . . .  Further, Elder could not wait until the resolution of the criminal case to file [*Elder II*] because he would risk preclusion of bringing suit on the basis of the running of the statute of limitations had he awaited for the outcome of the criminal case.

(Pls.' Resp. Ex. 3.)

*Banks v. LAB Lansing Body Assembly*, 271 Mich. App. 227, 231-32 (2006).  In *Banks*, the Michigan Court of Appeals cautioned against conflating the phrase "all claims arising out of the same transaction" with "all claims that accrue before entry of a final award." *Id.* at 231.  Res judicata bars the former but not the latter.  Accordingly, the court held that the plaintiff's claim for workers compensation for an injury that occurred five and a half years after he filed his previous suit against the same defendant was not barred even though a hearing on the first accident had not taken place yet.  *Id.* at 231-32.

In the instant case, the Court holds that res judicata bars Plaintiffs' claims.  There is no dispute that the grant of summary disposition to Defendants Forlini and the Township in *Elder II* was a final adjudication on the merits. *See Chakan*,  998 F. Supp. at 783.  Plaintiffs argue, however, that their *Elder IV* federal claims cannot be barred by the state court's disposition of *Elder II* because their claims were not ripe when they filed that action in August 2008.  (Pls.' Resp. 4.)  It is true that an essential element of a claim for malicious prosecution is the "termination of the prior criminal proceeding in favor of the accused."  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Peterson Novelties v. City of Berkley*, 259 Mich. App. 1, 14-15 (2003).  In *Peterson*, the Michigan Court of Appeals clearly distinguished the plaintiff's claims for false imprisonment and malicious prosecution from other claims, such as retaliation and deprivation of property, for res judicata purposes because the former require a favorable termination of the criminal charges against the plaintiff before they ripen.  259 Mich. App. at 15-16.

Mr. Elder's malicious prosecution claim, therefore, was not ripe until he was acquitted of the underlying criminal charges, which occurred on October 25, 2008 – months after Plaintiffs filed *Elder II* on August 6, 2008.  (Pls.' Resp. 4.)  Mr. Elder's acquittal came after Defendants Township

19

and Forlini filed their motion for summary judgment in *Elder II* on October 1, 2008, but <u>before</u>
Judge Caretti granted that motion on November 10, 2008, or dismissed the case with prejudice on
November 26, 2008.  (*Id.* at 6; Ex. 7.)  Pursuant to *Dubuc*, Plaintiffs had an obligation to supplement
their complaint in *Elder II* to include their malicious prosecution claim if it arose out of the same
transaction as that which gave rise to their allegations in the first place.  *See Dubuc*, 312 F.3d at 750.
While it is true that Plaintiffs would not be obligated to bring claims that did not exist during their
previous action, in this case there was a period of time during which the *Elder IV* claims were ripe
and *Elder II* was still open.  This distinguishes Plaintiffs' case from *Dietrich* and *Peterson Novelties*.
*See Dietrich*, 2008 WL 2389502, at *2; *Peterson Novelties*, 259 Mich. App. at 15.

Plaintiffs also cite to *McCoy* which stated "we do not believe that the preclusion of claims
that could have been resolved in the previous litigation necessarily includes new and independent
claims that arise after the original pleading in the first suit has been filed."  2010 WL 841198, at *5.
That language, however, is merely dicta and has little persuasive value because the *McCoy* court
explicitly found that the plaintiff's subsequent termination constituted a different transaction.  *Id.*,
at *6 ("In sum, we hold that McCoy's suit is not barred by res judicata because the claim upon
which the suit is based cannot be said to constitute the same transaction as that involved in the state-
court litigation.").  Accordingly, the Court must determine whether Plaintiffs' claims for defamation,
battery, supervisory liability, and malicious prosecution all arise out of the same transaction.

Plaintiffs argue that their claims in *Elder IV* arise out of a different transaction than those of
*Elder II*.  (Pls.' Resp. 12.)  They contend that the "transaction" for *Elder II* was Forlini's defamatory
comments and lies about the altercation between Mr. Elder and Hardcastle, which occurred in 2007,
whereas the "transaction" for *Elder IV* was the successful termination of the criminal charges

brought against Mr. Elder in October 2008.  (*Id.* at 16.)  Defendants argue that all of these claims clearly stem from the Township's inspection of Plaintiffs' home, the issuance of the stop work order, and the altercation between Mr. Elder and Hardcastle.  (Defs.' Br. 12.)

The Court finds that under Michigan's broad version of res judiciata these claims all arise out of the same transaction – namely the Plaintiffs' various interactions with the Township while they tried to build their dream home at 38350 Lakeshore Drive.  "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, and whether they form a convenient trial unit."  *Adair*, 470 Mich. at 125 (quoting 46 Am. Jur. 2d Judgments § 533, p. 801) (emphasis in the original).

Clearly, the defamation claims in *Elder II* arose out of what Plaintiffs perceived as the Township's unfair treatment and the physical altercation between Mr. Elder and Hardcastle.  The defamatory statements at issue in that claim were Forlini's purported "lies" about the encounter.  Similarly, it is undeniable that Plaintiffs' malicious prosecution claims are predicated on that same altercation.  Plaintiffs contend that the Township urged Hardcastle to bring criminal charges against Mr. Elder based on the encounter even though they knew he did nothing wrong.  (Pls.' Resp. 4.)  While temporally the malicious prosecution claim did not ripen until after the termination of the criminal suit against Mr. Elder a year later, a review of the Complaint in *Elder IV* demonstrates that Plaintiffs devote an entire section to the incident with Hardcastle.  (Compl. ¶¶ 65-87.)  Because Plaintiffs' retaliation, supervisory liability, and conspiracy allegations all revolve around the same group of facts, they too should be considered the same transaction.  Plaintiffs' battery claim against Hardcastle clearly arises from the same transaction as the claims in *Elder II*.

21

Finally, the Court must determine whether Defendants were in privity with the defendants in *Elder II*.  Clearly, this requirement is satisfied as to the Township and Forlini because they were the defendants in *Elder II*.  Plaintiffs argue that Hardcastle and Parakh are not in privity because they were not named as defendants in *Elder II* and have been sued in their individual capacity.  (Pls.' Resp. to Defs.' Concurrence, Dkt. No. 25, at 3.)  The parties do not need to be identical to be in privity with one another though.  *See Adair*, 470 Mich. at 122.  Plaintiffs admit that the Michigan Supreme Court has not addressed when individual government officials are in privity with their government employers.  (*Id.* at 4.)  *McCoy* and *Fleming* stand for the proposition that government employees are in privity with the entities they work for even if they are sued in their individual capacity.  *See McCoy*, 2010 WL 841198, at *3; *Fleming*, 2006 WL 2559862, at *7.

There is conflicting authority that Plaintiffs cite suggesting that privity does not exist between officials sued in their individual capacity and government agencies.  *See Stewart*, 1998 WL 1990460, at *3.  Aside from *Stewart*, however, Plaintiffs rely heavily on the Michigan Supreme Court's decision in *Howell v. Vito's Trucking & Excavating*, 386 Mich. 37, 43 (1971).  (Pls.' Resp. to Defs.' Concurrence 4, 4 n.7.)  However, *Howell* addressed whether the plaintiff was in privity with an earlier decision, and ruled that she was not because the second suit was brought in her capacity as a *representative* of her deceased mother's estate.  *See id.* at 43-45.  The case also addressed the mutuality requirement in collateral estoppel/issue preclusion cases.  *Id.* at 45-46.

Although there is some authority to the contrary, the Court holds that Hardcastle and Parakh are in privity with the Township, and therefore satisfy this requirement.  Where the interests of the governmental entity and individual officer are closely aligned, or "where the inclusion of the personal capacity claim amounts to nothing more than a pleading artifice, privity may be found to

22

exist regardless of the fact that the official has been sued in his personal capacity." *Fleming*, 2006 WL 2559862, at *6 (quoting *Connor v. Reinhard*, 847 F.2d 384, 394 (8th Cir. 1989)); *see also McCoy*, 2010 WL 841198, at *3. As in *Fleming* and *McCoy*, Plaintiffs' claims against Hardcastle and Parakh appear to be nothing more than pleading artifices.

## IV.   Conclusion

Because the Court finds that Plaintiffs could and should have raised their claims before *Elder II* was dismissed with prejudice, that the claims arose out of the same transaction as those in *Elder II*, and that Defendants Hardcastle and Parakh are in privity with the Township, the Court holds that res judicata bars Plaintiffs' current claims. Accordingly, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 6, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 6, 2011.


s/Denise Goodine
Case Manager